IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 3:10-CR-160 |
| v. ) | |
| ) | (VARLAN / GUYTON) |
| DUSTIN MORGAN, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C.§ 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on Defendant Morgan's Motion to Suppress [Doc. 93] the evidence obtained from three searches that occurred on December 14, 2010. The motion was filed on January 6, 2012, and argued on March 12, 2012. Assistant United States Attorneys Alexandra Hui, Frank M. Dale, Jr., and Jennifer Kolman appeared on behalf of the Government. Attorney Mark E. Brown represented the Defendant, who was also present. At the conclusion of the hearing, the Court took the motion under advisement.[1]

### I. POSITIONS OF THE PARTIES

Defendant Morgan is charged [Doc. 77], in Count One, with conspiring with Sandra Kincaid, Randy Kincaid, Wendi Henry, and others to distribute and to possess with intent to distribute controlled substances unlawfully out of Breakthrough Pain Therapy Center ("Breakthrough" or the

---

[1]The Court notes that it has declared [Doc. 37] this case to be complex due, in part, to the novel legal and factual issues involved.

1

clinic) from May 2009 to December 14, 2010. The Indictment alleges as the manner and means of the conspiracy that Sandra Kincaid, the primary operator of Breakthrough, examined patients and issued prescriptions, although she is not a medical practitioner. [Doc. 77, ¶¶12, 14] Count One states that Wendi Henry, Ms. Kincaid's daughter, worked at the pain clinic and provided patients with false medical documents, which the patients then used to obtain prescriptions for controlled substances. [Doc. 77, ¶¶12, 17] The Indictment states that the patients receiving the false medical documents gave Henry a portion of their narcotic pills, once they filled the prescriptions they obtained at the pain clinic. The Indictment alleges that Randy Kincaid and Dustin Morgan carried firearms at Breakthrough during business hours in order to protect the large cash revenue generated by the business. [Doc. 77, ¶11] Defendant Dustin Morgan is charged in Count Three with possession of a firearm on December 14, 2010, in furtherance of the drug trafficking alleged in Count One.

Defendant Morgan asks the Court to suppress evidence gained from three searches that occurred on December 14, 2010: (1) The search of his desk at the clinic pursuant to a search warrant; (2) the warrantless search of his residence at 3905 Wildwood; and (3) the search of his safe deposit box at Alcoa Federal Credit Union pursuant to a search warrant. He argues that as an employee of Breakthrough, he enjoyed a legitimate expectation of privacy in his desk and that officers could not search it without his consent. With regard to the search of his residence, he contends that his consent to search the residence was tainted by his illegal arrest. Finally, he asserts that officers could not lawfully search his safe deposit box because it was not the property of Sandra or Randy Kincaid or Breakthrough.

The Government responds that the evidence was lawfully obtained in all three searches. It maintains that the search of Defendant Morgan's desk at the clinic was within the scope of the search

of the clinic. The Government argues that Defendant Morgan was not in police custody at the time he voluntarily consented to the search of his residence. Finally, it contends that officers had a search warrant to search the Defendant's safe deposit box.

## II. SUMMARY OF THE TESTIMONY

The Government called a single witness, Special Drug Enforcement Agent Derryle Smith. Agent Smith testified that he was present for the execution of a search warrant at Breakthrough Pain Therapy clinic on December 14, 2010. Agent Smith said that a SWAT team executed a "dynamic entry" into the clinic and that the clinic's owners Randy and Sandra Kincaid were arrested pursuant to arrest warrants. Defendant Morgan was not arrested that day and was free to leave the clinic during the search. Other agents, who were at the Maryville, Tennessee residence that Morgan shared with his Grandfather, called requesting consent to search from Morgan. Agent Smith said that his supervisor Neal Morganstern filled in the address of the residence, the make and model of the Defendant's car, and the date on a standard Consent to Search form. Agent Smith witnessed Defendant Morgan sign the Consent to Search form [Exh. 1], permitting the search of 3905 Wildwood and a white RX-8 Mazda. Agent Smith said that the Defendant signed the form without any hesitation and that he did not appear to be nervous or agitated. He stated that no one raised their voice to the Defendant, who was not in custody or restrained in any way. After Defendant Morgan signed the consent form, Agent Smith telephoned the agents at the residence and told them that Defendant Morgan had signed the form. Agent Smith then traveled to that residence.

On cross-examination, Agent Smith testified that the Defendant's room at the residence he shared with his Grandfather was locked. The agents at the residence wanted to search the

3

Defendant's room and contacted the agents at Breakthrough Pain Therapy. Agent Smith testified that after Agent Morganstern filled in the information on the consent form, the Defendant was asked to read it and then he signed it. At that time, approximately eight law enforcement officers were at Breakthrough Pain Therapy. Two officers remained with the Kincaids in their office, one or two officers were with the patients, and three or four other officers were "milling around" throughout the clinic. Additional officers were outside the clinic. Agent Smith said that Defendant Morgan was not in custody or under arrest at this time.

Agent Smith stated that he did not participate in the initial entry into the clinic. He said that he walked through the clinic, after it was secured, but then returned to the parking lot. His only contact with Defendant Morgan was regarding the Consent to Search form. He said that other employees of the clinic were also present and that he did not tell the other employees or Defendant Morgan that they were free to go. Agent Smith stated that he did not participate in the search of the clinic and he did not recall whether any drugs were found on Defendant Morgan's person.

### III. FINDINGS OF FACT

Based upon the testimony of Agent Smith; the consent form, which was an exhibit to the hearing; and the search warrants and related documents, the Court makes the following factual findings:

On December 14, 2010, DEA agents executed several search warrants related to an investigation of distribution of controlled substances from a pain clinic. One of these search warrants was for Breakthrough Pain Therapy Center owned by Sandra and Randy Kincaid. A SWAT team burst into the clinic, arrested the Kincaids pursuant to arrest warrants, and detained them in

their office. While detained, the Kincaids gave their consent to search the clinic. Employees and patients remained inside the clinic during the subsequent search. Defendant Morgan, an employee of Breakthrough, was present during the search. As the search began, DEA Agent Derryle Smith was contacted by agents at the house the Defendant shared with his grandfather. These agents did not have a search warrant for this residence and sought the Defendant's consent to search his locked bedroom. Agent Neil Morganstern filled in the areas to be searched and the date on the DEA's standard Consent to Search form, and he and Agent Smith presented the form to Defendant Morgan. The Defendant read the form and signed it without hesitation. At that time, two to four other officers, besides Agents Smith and Morganstern, were in the area. No one yelled at the Defendant and his demeanor was calm.

During the search of Breakthrough, agents found a loaded pistol in a holster in the Defendant's desk. That same day, agents also executed a search warrant for the Defendant's safe deposit box at Alcoa Federal Credit Union and seized currency from the safe deposit box.

## IV. ANALYSIS

The Fourth Amendment protects the right to be free from unreasonable searches and seizures. In this respect, a judge shall not issue a warrant for the search of a person, home, or personal property except upon a finding of "probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. In the instant case, the Defendant asks the Court to suppress evidence from three searches, all occurring on December 14, 2010: (1) The search of his desk at the clinic where he worked, (2) the search of his residence, and (3) the search of his safe deposit box. The Court will

5

examine the constitutionality of each of these searches.

### A. Search of Defendant's Desk

On December 14, 2010, DEA agents searched Breakthrough Pain Therapy Center pursuant to a search warrant. Upon their arrival at the clinic, the agents detained clinic owners Sandra and Randy Kincaid, who then consented to the search of the clinic. Defendant Morgan, an employee of Breakthrough, objects to the search of his desk. He argues that he had a legitimate privacy interest in his desk and that he did not consent to the agents' search of it. Moreover, at the evidentiary hearing, the Defendant argued that the agents acted in bad faith in searching his desk without gaining his consent, despite having a warrant to search the pain clinic. The Government responds that the agents properly searched the Defendant's desk in executing the search warrant for the search of the clinic. Moreover, it argues that nothing suggests that the executing officers acted in bad faith during the search.

On December 13, 2010, the undersigned issued a search warrant[2] authorizing the search of Breakthrough for certain patient files; records relating to controlled substances; currency; firearms and ammunition; financial, business, and tax records; addresses and telephone numbers; and computers. Attachment B to the search warrant, which lists the items to be seized and which is expressly incorporated on the face of and attached to the search warrant, authorizes "[t]he opening, search and removal, if necessary, of any safe or locked receptacle or compartment, including

---

[2]Despite the Government's reliance on the search warrant for the clinic, neither of the parties introduced it as an exhibit at the suppression hearing or attached it to their briefs. Because the search warrant for Breakthrough was issued by and returned to the undersigned, the Court was able to reference the original search warrant and official copies of the related documents retained by the Court.

6

briefcases as some or all of the property heretofore may be maintained [therein.]" Agents executed the search warrant at Breakthrough on December 14, 2010. The search inventory reflects that a black leather gun holster containing a pistol, loaded with six rounds of ammunition, was found in Defendant Morgan's desk.

The Court finds that the search warrant for the clinic authorized agents to search Defendant Morgan's desk at Breakthrough. When executing a search warrant, officers are permitted to look in any container or location on the premises that could hold the items to be seized, even if those containers are not specified in the search warrant. See United States v. McLavain, 310 F.3d 434, 439 (6th Cir. 2002) (finding search under a bed and in a garage to be objectively reasonable pursuant to a search warrant for a fugitive because a person could hide in these locations). In order to search a container, it must be reasonable that the item(s) listed in the search warrant could be found therein. Id. In the instant case, Defendant Morgan's desk could have contained a number of items for which the executing agents were authorized to search. While it appears that the Defendant likely has standing to challenge the search of his desk,[3] he does not challenge the validity of the search warrant. Instead, he argues that he did not give consent to search his desk and that the Kincaids' consent was insufficient to permit the agents to search it. The Court finds that the search warrant for Breakthrough authorized the search of the Defendant's desk, regardless of anyone's consent or lack

---

[3]The Supreme Court has interpreted the protections granted by the Fourth Amendment to extend to "commercial premises" as well as homes, Mancusi v. DeForte, 392 U.S. 364, 367 (1968), but has held that "[a]n expectation of privacy in a commercial premises . . . is different from, and indeed less than, a similar expectation in an individual's home, " New York v. Burger, 482 U.S. 691, 700 (1987). "It has long been settled that one has standing to object to a search of his office, as well as of his home." DeForte, 392 U.S. at 369; see also United States v. Mohney, 949 F.2d 1397, 1403 (6th Cir. 1991) (observing that "[i]n some circumstances, an officer of a corporation may be a 'person aggrieved' by a corporate search and seizure and thus have standing to challenge the search"), cert. denied 504 U.S. 910 (1992).

7

thereof. The search warrant for Breakthrough remains unchallenged. The agents' search of any location permitted by the search warrant, including the Defendant's desk, did not constitute bad faith. Accordingly, the Court finds no Fourth Amendment violation in the search of Defendant Morgan's desk.

### B. Search of Defendant Morgan's Residence

While the search of Breakthrough was taking place, agents also sought to search the homes of persons they believed to be part of the drug distribution conspiracy.[4] Agents traveled to 3905 Wildwood, which is where the Defendant lived with his grandfather. The agents did not have a search warrant for this residence, so they called Agent Smith at Breakthrough and asked him to get consent from Morgan to search Morgan's locked bedroom. Agent Morganstern filled in the address of the residence, the make and model of the Defendant's car, and the date on a standard Consent to Search form. Defendant Morgan then signed the consent form. The Defendant argues that his consent to search was tainted by his illegal arrest, which was not based upon probable cause. At the evidentiary hearing, he argued that although he signed a consent form, no reasonable person would have felt that they could refuse to sign the form in light of the surrounding circumstances–the agents' "raid" on Breakthrough and the numerous agents inside and outside of the clinic.

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions." Katz v. U.S., 389 U.S. 347, 357 (1967) (footnotes omitted). One exception to the warrant requirement is a search pursuant to the voluntary consent of

---

[4]The Court notes that search warrants for the homes of Sandra and Randy Kincaid at 3903 Wildwood and Codefendant Wendi Henry at 3901 Wildwood were also executed on that day.

one with authority.  Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); United States v. Van Shutters, 163 F.3d 331, 335 (6th Cir. 1998) (holding that "[i]t is well-established that a warrantless search by law enforcement officials will be upheld if a detainee has voluntarily consented to the search").  Consent to search must be "voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion."  United States v. Canipe, 569 F.3d 597, 602 (6th Cir.), cert. denied 130 S. Ct. 655 (2009); United States v. Worley, 193 F.3d 380, 385 (6th Cir. 1999); United States v. Cooke, 915 F.2d 250, 252 (6th Cir. 1990).  Furthermore, consent must be more than mere acquiescence to apparent lawful authority.  Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968); Worley, 193 F.3d at 386.  The government bears the burden of proving that the consent was voluntary and not "the result of coercion, duress, or submission to a claim of authority" based upon the totality of the circumstances.  Id.  The government must make this showing through "clear and positive testimony" and to a preponderance of the evidence.  Id. at 385.

In evaluating whether consent to search was voluntarily given, the Court considers the totality of the circumstances.  United States v. Ward, 400 F. App'x 991, 996 (6th Cir. 2010); cert. denied, 131 S. Ct. 2977 (2011).  The totality of the circumstances may include "'the age, intelligence, and education of the individual; whether the individual understands the right to refuse consent; whether the individual understands his or her constitutional rights; the length and nature of detention; and the use of coercive or punishing conduct by the police.'"  Id. (quoting United States v. Riascos-Suarez, 73 F.3d 616, 625 (6th Cir. 1996)).

In the instant case, the Defendant was present at Breakthrough during the search of the clinic. Law enforcement's initial entry into the clinic was "dynamic," and the Kincaids were immediately arrested.  However, Agent Smith, one of the agents executing the search warrant at the clinic, said

that the Defendant was not under arrest and was free to leave the clinic. Although as many as eight officers were present in the clinic during the execution of the search, the Court finds that all of those officers were not in the room where the Defendant signed the consent form. The evidence before the Court is that two agents, Agent Smith and Agent Morganstern, were present with the Defendant when he gave consent, and there may have been between two and four other officers "milling around" the clinic. There is no evidence that these other officers had their weapons drawn or even spoke to the Defendant.

Agent Morganstern presented the Defendant with a consent form, which the Defendant read and then signed. The consent form, which was introduced as an exhibit to the evidentiary hearing, states "I HAVE NOT BEEN THREATENED, NOR FORCED IN ANY WAY." and "I FREELY CONSENT TO THIS SEARCH." The only evidence before the Court is that the Defendant signed the form without hesitation and did not appear to be nervous or agitated. None of the officers raised their voice to the Defendant, and the Defendant was not restrained in any way at the time he gave consent to search.

Moreover, although Agent Smith did not tell the Defendant that he was free to leave, he stated that the Defendant was not in police custody at the time he signed the consent form and was not arrested that day. The Court has no evidence that the Defendant was under arrest, much less illegally arrested, at the time he signed the consent form. Moreover, the Court observes that the executing officers could have *legally* detained the Defendant incident to the execution of the search warrant. See Michigan v. Summers, 452 U.S. 692, 703-05 (1981) (holding that officers executing a search warrant to search for contraband may categorically detain the occupants of the location to be searched ); Burchett v. Kiefer, 310 F.3d 937, 943 (6th Cir. 2002) (observing that the Sixth Circuit

10

Case 3:10-cr-00160-TAV-HBG   Document 129   Filed 06/24/13   Page 10 of 16   PageID #: 574

has extended Summers to occupants who were not residents but who were present at the execution of a search warrant). Based upon the totality of the circumstances presented to the Court, the Court finds that Defendant Morgan was not illegally seized at the time he signed the consent form and that he voluntarily gave consent to search his residence. Accordingly, the Court finds no Fourth Amendment violation in the search of the Defendant's residence pursuant to his consent.

### C. Search of Defendant's Safe Deposit Box

The Defendant asks the Court to suppress currency seized from his safe deposit box at Alcoa Federal Credit Union. He argues that he had a legitimate expectation of privacy in his safe deposit box. He states that the execution of the search warrant for his safe deposit box was "without probable cause" because he was not "the target of the indictment or search warrant." [Doc. 94, p.4] The Government replies that the executing agents had a valid search warrant for the Defendant's safe deposit box and whether he was a target or charged at the time "has no bearing upon the ability of federal agents [to] search for and seize items that are plainly within the scope of [a] duly issued search warrant[]. [Doc. 101, p.15]

The Court agrees with the Government that the issuance of a search warrant does not turn upon whether the person with an expectation of privacy in the premises or property is charged with a crime or is the target of an investigation. Instead, a search warrant may issue upon the judge finding probable cause to believe that the location to be searched contains contraband or the evidence of a crime. United States v. Besase, 521 F.2d 1306, 1307 (6th Cir. 1975).

> There is no constitutional requirement that the warrant name the person who owns or occupies the described premises. The specificity required by the Fourth Amendment is not as to the person against whom the evidence is to be used, but rather as to the place to be

11

searched and the thing to be seized.

Id. (citations omitted). "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." Zurcher v. The Stanford Daily, 436 U.S. 547, 557 (1978). Thus, the Court will examine whether probable cause existed to issue a search warrant for the Defendant's safe deposit box.

As set out above, the Fourth Amendment requires probable cause for the issuance of a search warrant. Probable cause to search is "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). To make such a showing "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Id. at 244 n.13. Thus, the Supreme Court has observed that

> probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," Carroll v. United States, 267 U.S. 132, 162, . . . (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required. Brinegar v. United States, 338 U.S. 160, 176, . . . (1949).

Texas v. Brown, 460 U.S. 730, 742 (1983). In other words, probable cause is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion." United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990). Whether probable cause to issue a search warrant exists is evaluated by looking at the totality of the circumstances. Gates, 462 U.S. at 238.

The issuing authority's determination that probable cause exists is entitled to "'great deference.'" United States v. Allen, 211 F.3d 970, 973 (6th Cir. 2000) (quoting Gates, 462 U.S. at

12

236). This deferential standard promotes the preference for the use of search warrants as opposed to warrantless searches. Id. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. The "duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." Id. at 238-39. In making this determination, the Court considers only the information that was before the issuing judge–in other words, only what is contained within the four corners of the supporting affidavit. United States v. Hatcher, 473 F.2d 321, 323 (6th Cir. 1973).

The Court takes the Defendant's general argument regarding probable cause actually to be a challenge to the nexus between the alleged crimes and the location to be searched. In other words, the Defendant is arguing that the issuing judge lacked probable cause to believe that evidence of the crimes of drug distribution or money laundering would be found in the *Defendant's* safe deposit box. An affidavit offered in support of a search warrant "must indicate a nexus between the place to be searched and the evidence sought and this nexus may be established by the nature of the items and normal inferences of where a person would keep such items." United States v. Hawkins, 278 F. App'x 629, 634 (6th Cir.), cert. denied, 555 U.S. 1019 (2008); see also United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004). While an officer's training and experience regarding where criminals keep contraband or proceeds is relevant to the probable cause determination, it alone cannot provide a nexus between the location to be searched and the crime. See United States v. Schultz, 14 F.3d 1093, 1098 (6th Cir. 1994). In Schultz, the sole connection in the search warrant affidavit between drug trafficking and Schultz's safe deposit box was the affiant's belief, based upon

13

his experience and training, that records of drug distribution were commonly kept in safe deposit boxes. Id. The appellate court held that the affiant

> did not have anything more than a guess that contraband or evidence of a crime would be found in the [safe deposit] boxes, and therefore the first warrant should not have been issued. To find otherwise would be to invite general warrants authorizing searches of any property owned, rented, or otherwise used by a criminal suspect—just the type of broad warrant the Fourth Amendment was designed to foreclose.

Id. at 1098-99 (declining to apply the exclusionary rule because the executing officer relied on the search warrant in good faith).

In the instant case, Special IRS Agent Phillip S. Brown provided an affidavit in support of the search warrant for the Defendant's safe deposit box. In the affidavit, Agent Brown states that based upon his training and experience, he knows that persons accumulating proceeds from illegal activities will attempt to hide the existence or source of these proceeds by, among other things, maintaining financial records in safe deposit boxes and other areas they control. The affidavit describes a "pill mill operation" at Breakthrough as evidenced by (1) the large number of patients (between 50-100) seen at the clinic daily, many of whom are from out of Blount County; (2) the short amount of time that the patients stay at the clinic; (3) the clinic's policy of only accepting payment in cash, generating enormous cash proceeds, and (4) the refusal of some local pharmacies to fill prescriptions from Breakthrough. Agent Brown relates that several family members of Sandra Kincaid work at Breakthrough, including the Defendant who is her son. The DEA investigation of the clinic reveals that the Defendant "is responsible for security at the clinic and also collects the cash payments from the patients."

Agent Brown's affidavit states that the Defendant Morgan and his wife opened the safe

14

deposit box at Alcoa Federal Credit Union on July 19, 2010. Agent Brown's investigation reveals that the Kincaids deposited $385,020 in cash proceeds into their bank accounts in 2010 and the deposits were staggered in such a way as to avoid federal reporting requirements for amounts over $10,000. The Defendant's safe deposit box was accessed twenty-two times and nineteen of those occurred the day of, the day before, or the day after a structured deposit by the Kincaids. A teller at Alcoa Federal Credit Union related that on one occasion, the Defendant and his wife entered the bank empty handed, visited their safe deposit box, and then the Defendant's wife returned from the box with a sum of cash in her hand to deposit. Also, another teller stated that the Defendant always stayed at his safe deposit box much longer than customers normally do and that the Defendant's box felt full but not heavy.

     The Court finds that the information provided in Agent Brown's affidavit shows a nexus between the drug conspiracy and money laundering and the Defendant's safe deposit box. The Defendant, son of Sandra Kincaid and stepson of Randy Kincaid, was in charge of security and accepting cash payments at the clinic. The clinic took in large amounts of cash revenue, and the Kincaids deposited the cash in such a way as to avoid federal reporting requirements. During the six months between the opening of the Defendant's safe deposit box and the search warrant, the Defendant accessed his box twenty-two times, which is almost weekly. Nineteen of the times that the Defendant accessed his box occurred on the day of, the day before, or the day after a structured deposit into the Kincaids' bank accounts. Each time the Defendant accessed his box, he took much longer than customers normally do. Tellers had seen the Defendant's wife deposit cash into her and the Defendant's bank account immediately after accessing the safe deposit box. Also, the Defendant's safe deposit box was full but not heavy, which is consistent with a box filled with cash.

These facts, construed together, provide probable cause to believe that the Defendant was storing the cash proceeds from the pill mill in his safe deposit box. Moreover, the Court finds that unlike in Schultz, the nexus in the instant case is based upon more than the affiant's training and experience on where drug distributors conceal their proceeds. Here, the Defendant's conduct regarding his safe deposit box in combination with his role in the drug conspiracy provide the necessary nexus. Thus, the Court finds that probable cause existed to issue the search warrant for the Defendant's safe deposit box.

## V. CONCLUSION

After carefully considering the motion, memoranda, oral arguments, exhibits, and relevant legal authorities, the Court finds no basis to suppress the evidence gained in the searches of the Defendant's desk, home, and safe deposit box. For the reasons set forth herein, it is **RECOMMENDED** that the Defendant's Motion to Suppress [**Doc. 93**] be **DENIED**.[5]

                                                   Respectfully submitted,

                                                   s/ H. Bruce Guyton
                                                 United States Magistrate Judge

---

[5] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).