UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:10-CR-160-4 |
| | ) | (VARLAN/GUYTON) |
| DUSTIN MORGAN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This criminal matter is before the Court for consideration of the Report and Recommendation entered by United States Magistrate Judge H. Bruce Guyton (the "R&R") [Doc. 129]. The R&R addressed defendant Dustin Morgan's Motion to Suppress [Doc. 93]. The magistrate judge held a hearing on the motion on March 12, 2012. The magistrate judge later issued the R&R [Doc. 129], recommending that the Court deny defendant's motion [*Id.* at 16]. The defendant has submitted objections to the R&R [Doc. 130], and the government has submitted a response to those objections [Doc. 131].

I.   **Background**

The defendant is charged with one count of conspiracy to distribute Schedule II and Schedule IV controlled substances, in violation of 21 U.S.C. § 846, and one count of possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c), as part of a twenty-five count superseding indictment in this case [Doc. 77]. The

charges stem from the defendant's involvement in Breakthrough Therapy Center ("Breakthrough"), which was primarily operated by defendant's mother, co-defendant Sandra Kincaid, where it is alleged that controlled substances were unlawfully distributed. Magistrate Judge Guyton, after a hearing and considering the parties' positions, made the following findings of fact with regard to defendant's motion to suppress:

> On December 14, 2010, DEA agents executed several search warrants related to an investigation of distribution of controlled substances from a pain clinic. One of these search warrants was for Breakthrough Pain Therapy Center owned by Sandra and Randy Kincaid. A SWAT team burst into the clinic, arrested the Kincaids pursuant to arrest warrants, and detained them in their office. While detained, the Kincaids gave their consent to search the clinic. Employees and patients remained inside the clinic during the subsequent search. Defendant Morgan, an employee of Breakthrough, was present during the search. As the search began, DEA Agent Derryle Smith was contacted by agents at the house the Defendant shared with his grandfather. These agents did not have a search warrant for this residence and sought the Defendant's consent to search his locked bedroom. Agent Neil Morganstern filled in the areas to be searched and the date on the DEA's standard Consent to Search form, and he and Agent Smith presented the form to Defendant Morgan. The Defendant read the form and signed it without hesitation. At that time, two to four other officers, besides Agents Smith and Morganstern, were in the area. No one yelled at the Defendant and his demeanor was calm.
>
> During the search of Breakthrough, agents found a loaded pistol in a holster in the Defendant's desk. That same day agents also executed a search warrant for the Defendant's safe deposit box at Alcoa Federal Credit union and seized currency from the safe deposit box.

[Doc. 129]. The defendant does not object to these findings of fact and the Court accepts these findings of fact.

On the basis of these facts, Magistrate Judge Guyton first found, that with regard to the search of the defendant's desk, the search warrant issued as to Breakthrough, which authorized the search of the clinic for patient files, currency, firearms, and various business records, authorized agents to search the defendant's desk.  Next, with regard to the search of defendant's residence, Magistrate Judge Guyton found that, under the totality of the circumstances, the defendant was not under arrest at the time he signed the consent form, and did not appear to be nervous or agitated, or restrained in any way. Noting that the executing officers could have legally detained the defendant incident to execution of the search warrant, Magistrate Judge Guyton found that defendant was not illegally seized and there was thus no Fourth Amendment violation in the search of his residence.  Finally, Magistrate Judge Guyton found that there was sufficient probable cause to issue a search warrant of defendant's safety deposit box and that the currency found therein was within the scope of the search warrant.

## II.     Standard of Review

As required by 28 U.S.C. § 636(b)(1) and Rule 59(b) of the Federal Rules of Criminal Procedure, the Court has undertaken a *de novo* review of those portions of the R&R to which the defendant has objected, considering the R&R, the parties' underlying and supporting briefs, the defendant's objections, and the government's response to those objections, all in light of the relevant law.

### III. Analysis

The Fourth Amendment protects the right to be free from unreasonable searches and seizures. To that end, a judge may not issue a warrant for the search of a person, home, or personal property except upon a finding of "probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. With these guiding principles in mind, the Court will address each of the defendant's objections in turn.

#### A. The Search of Defendant's Desk

The defendant first argues that Magistrate Judge Guyton incorrectly held that the search warrant covering Breakthrough authorized the search of defendant's desk. The defendant's objection in this regard is twofold: 1) that the search warrant did not extend to the search of his desk, in which he held a reasonable expectation of privacy; and 2) the search warrant itself was invalid as applied to the defendant because there was insufficient cause as to the defendant personally, given that he was not charged in the indictment at the time and was not the "target of the investigation" [Doc. 130 at 2].

The Court construes the defendant's first argument as disputing the reasonableness of the officers' search of the defendant's desk in executing the warrant.[1] "'The general touchstone of reasonableness which governs Fourth Amendment analysis governs the

---

[1] While the defendant argues that he did not give consent to the search of his desk and that the Kincaids did not have the authority to give such consent, the Court notes that no consent was necessary, as long as the search of the desk was within the scope of a valid search warrant. *See Peterson v. Smith*, 510 F. App'x 356, 365 (6th Cir. 2013) (nothing that "[c]onsent is a well-recognized exception to the Fourth Amendment's warrant requirement").

4

method of execution of the warrant.'" *Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco, and Firearms,* 452 F.3d 433, 445 (6th Cir. 2006) (quoting *United States v. Ramirez,* 523 U.S. 65, 71 (1998)). "In answering the fundamental inquiry of whether this search was reasonable, we of course look at the totality of the circumstances." *Id.* (internal quotation marks omitted). When executing a search warrant, the Sixth Circuit has noted that officers are reasonably permitted to look in those areas where the objects of the search warrant may be located. *See United States v. Richards*, 659 F.3d 527, 538 (6th Cir. 2011) (upholding extensive search of computer files where items described in warrant could be reasonably be found); *see also United States v. Dawkins*, 83 F. App'x 48, 52 (6th Cir. 2003) (noting that search of firearms which included removing vent covers, opening cereal boxes, and the like, was permissible because the areas searched "could very well have contained small arms or ammunition"); *United States v. McLavain*, 310 F.3d 434, 439 (6th Cir. 2002) (finding that search under bed and in garage was reasonable under plain view exception doctrine because subject of fugitive warrant could hide in those locations).

In this case, the search warrant issued for Breakthrough authorized the search of the clinic for the following: patient files; records related to controlled substances; currency; firearms and ammunition; financial and business records; addresses and telephone numbers; and computers.[2] An attachment to the warrant authorized the

---

[2] Although a copy of the search warrant does not appear as an exhibit entered by the parties, the Court accepts the magistrate judge's description of the warrant, given that the defendant does not object to this aspect of the R&R [*See* Doc. 129 at 6].

5

opening of any locked safe or other compartment where property subject to seizure could be held. From these facts, the Court concludes that the magistrate judge properly held that the search for those items extended to the desk, as the desk could reasonably contain not only firearms such as the one seized, but also patient files and other business records. Although the defendant argues that the search was initiated merely to find grounds for charging the defendant, the defendant has presented no evidence of bad faith or that the search of the desk was conducted for any other reason than to recover the items listed in the search warrant.

As to the defendant's second argument, that there was insufficient probable cause as to him specifically to serve as the basis for a warrant, the Court finds this argument to be meritless. The Sixth Circuit has held that "[t]he specificity required by the Fourth Amendment is not as to the person against whom the evidence is to be used, but rather as to the place to be searched and the thing to be seized." *United States v. Besase*, 521 F.2d 1306, 1307 (6th Cir. 1975) (citations omitted). Moreover, "'[s]earch warrants are not directed at persons; they authorize the search of place[s] and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized.'" *United States v. Pinson*, 321 F.3d 558, 564-65 (6th Cir. 2003) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)). This principle underlies the Sixth Circuit's holding that property "owned by a person absolutely innocent of any wrongdoing may nevertheless be searched under a valid warrant." *Mays v. City of Dayton*, 134 F.3d 809, 814 (6th Cir. 1998). The defendant does not challenge the validity

of the search warrant of Breakthrough, the subject of the search warrant, which in turn authorized the search of the defendant's desk. Accordingly, this objection is **OVERRULED**.

B.  **Search of the Defendant's Residence**

With regard to the search of his residence, the defendant contends that he did not voluntarily give his consent to the search under the circumstances created by the executing officers' presence. Specifically, the defendant argues that following the dynamic raid, having witnessed the arrest of his mother and step-father, with agents at his residence seeking consent, "a reasonable person would not have felt free to leave or free to withhold consent" [Doc. 130 at 3]. The government responds that the defendant's assertions are inconsistent with the facts, as found by the magistrate judge, and that the defendant's signing of the consent form was a voluntary act.

"It is well established that a warrantless search by law enforcement officials will be upheld if a detainee has voluntarily consented to the search." *United States v. Shutters*, 163 F.3d 331, 335 (6th Cir. 1998) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). The consent must be "voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or correction." *United States v. Canipe*, 569 F.3d 597, 602 (6th Cir. 2009). The government "bears the burden of proving the consent to search was voluntary under the totality of the circumstances." *United States v. Salvo*, 133 F.3d 943, 953 (6th Cir. 1998). "This burden entails proving by 'clear and positive' testimony that the consent was 'unequivocal, specific, intelligently given and not

7

influenced by any duress or coercion.'" *Id.* (quoting *United States v. Taylor*, 956 F.2d 572, 573 (6th Cir. 1992)).

In this case, the facts indicate that the defendant was in the presence of agents Smith and Morganstern at the time he signed the consent form. Several other employees and patients of Breakthrough remained present during the search. There were approximately two to four other officers in the area, but the defendant does not claim that they were near him or communicated with him in any way. The record does not indicate that any of the officers raised their voices to the defendant, or that his demeanor was anything other than calm. Further, the defendant signed the consent form, which Agent Smith testified was done without any hesitation or appearance of nervousness. While the defendant argues that he was detained by the DEA agents and was never told he could leave, the Court notes that the defendant was not restrained in any way, nor did he ever ask permission to leave. *See Ohio v. Robinette*, 519 U.S. 33 (1996) (holding that the Fourth Amendment does not require law enforcement officers to advise seized individuals that they are free to leave prior to requesting consent to search); *see also Canipe*, 569 F.3d at 601-02 (noting that "absent reasonable suspicion of criminal activity, a law enforcement officer must allow an individual to leave if he so requests, and any consent obtained by the officer's refusal to permit him to do so is invalid" (citation omitted)). Moreover, agent Smith testified that the defendant was not under arrest at the time, and was not arrested the day of the search. Nothing in the record indicates that the consent to search the defendant's residence was involuntary. The defendant has not

8

presented any evidence or case law that would lead the Court to conclude that the magistrate judge's conclusion in this regard was erroneous; accordingly, this objection is **OVERRULED**.

### C. Search of Safe Deposit Box

Finally, the defendant argues that the magistrate judge erred in finding a sufficient nexus between the alleged crimes, the drug conspiracy and money laundering, and the search deposit box, so that the search warrant was invalid. As the defendant was not charged with a crime at the time the search warrant issued, the defendant argues, there was no probable cause to believe that the safe deposit box contained proceeds of drug distribution activities. The defendant also points to the fact that he was never charged with money laundering as evidence that there was insufficient probable cause to justify the issuance of a search warrant for the deposit box. The government responds by arguing that the facts considered by the magistrate judge provided a substantial basis for the conclusion that a search would uncover evidence of wrongdoing.

Generally, probable cause to search means "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In other words, probable cause is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). In reviewing the issuance of a search warrant based on probable cause, courts are deferential to the issuing magistrate judge's finding of probable cause, which "'should not be set aside unless arbitrarily exercised.'" *United*

9

*States v. Goff*, 6 F.3d 363, 366 (6th Cir. 1993) (quoting *United States v. Pelham*, 801 F.2d 875, 877 (6th Cir. 1986)). The "duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 238-39; *see also United States v. Terry*, 522 F.3d 645, 647 (6th Cir. 2008) (noting that "when judging the sufficiency of an affidavit to establish probable cause in support of a search warrant . . . reviewing courts are to accord the magistrate's determination great deference" (quotation omitted)). An affidavit in support of a search warrant must show "a 'nexus between the place to be searched and the evidence sought.'" *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2004) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)).

In this case, the magistrate judge, relying upon the affidavit by IRS Special Agent Phillip Brown, found a sufficient nexus between the safe deposit box and drug conspiracy/money laundering crimes based on the following facts: (1) the description of Breakthrough as a "pill mill" operation, based on the large number of patients at the clinic, many of whom were from outside the county, and the clinic's policy of only accepting cash; (2) that several of Sandra Kincaid's family members, including the defendant, who is her son, worked at Breakthrough, and was responsible for collecting cash payments from patients; (3) that the defendant's safe deposit box was accessed twenty-two times in a six month period, usually following a deposit by Ms. Kincaid; (4) that on at least one occasion the defendant visited the safe deposit box and made a large cash deposit immediately thereafter; (5) that each time the defendant accessed the safe

deposit box, he took longer than other customers normally do; and (6) that the defendant's safe deposit box was full but not heavy, indicating that the box was filled with cash [Doc. 129 at 14-15].

The defendant does not dispute these findings, but argues that, as he was not charged with money laundering, there was no probable cause to believe that evidence of money laundering would be found in the safe deposit box. Thus, defendant argues, the search of the safe deposit box was not reasonably related to any crimes charged against him. The Court finds that this argument is meritless, however, because, as previously noted, the focus in probable cause analysis is the relationship between the crimes charged, the place to be searched, and the thing to be seized, rather than the person who owns the property in question. *See Pinson*, 321 F.3d at 564-65. Given the large cash proceeds generated by Breakthrough, the defendant's role at Breakthrough as well as his relationship with its owner, and the manner in which the defendant accessed his safe deposit box, the Court concludes that there was a sufficient nexus between the safe deposit box and the drug and money laundering conspiracies. Accordingly, the Court concludes that there was probable cause to issue the search warrant for the safe deposit box, and the defendant's objection to the R&R in this regard will be **OVERRULED**.

## III. Conclusion

In sum, after reviewing the record in this case, including the R&R, the objections, the underlying briefs, and the relevant law, the Court determines that the magistrate judge fully and appropriately considered the arguments in support of the motion to suppress.

11

Further, the Court agrees with the magistrate judge's analysis and findings.  Accordingly, and for the reasons previously stated, the defendant's objections to the R&R [Doc. 130] are **OVERRULED**, the R&R [Doc. 129] is **ACCEPTED in whole**, and the defendant's Motion to Suppress [Doc. 93] is hereby **DENIED**.

IT IS SO ORDERED.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE